IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. l:15-md-02627 (AJT/TRJ) |
| This Document Relates to ALL Cases | |

## FIRST AMENDED REPRESENTATIVE CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................ 1

II.  JURISDICTION ................................................................................................. 6

III. PARTIES ........................................................................................................... 6

IV.  FACTUAL ALLEGATIONS .............................................................................. 7

     A.   Lumber Liquidators Represents that its Laminate Wood Flooring Products
          Meet California's Strict Emissions Standards for Products it Sells in Every
          State................................................................................................................ 7

     B.   California's Formaldehyde Standards..................................................... 9

     C.   Lumber Liquidators' Composite Laminate Flooring Products ........................... 10

     D.   Lumber Liquidators Misrepresents that its Composite Laminate Flooring
          Products Meet California Emissions Standards .................................... 13

V.   FACTS RELATING TO NAMED PLAINTIFFS ........................................... 20

     A.   Laura Washington and Lila Washington ............................................. 20

     B.   Maria and Romualdo Ronquillo.......................................................... 22

     C.   Joseph Michael Balero ....................................................................... 24

     D.   Ryan and Kristin Brandt ..................................................................... 26

     E.   Devin and Sara Clouden ..................................................................... 29

     F.   Kevin and Julie Parnella ..................................................................... 31

     G.   Shawn and Tanya Burke ..................................................................... 33

VI.  CLASS ACTION ALLEGATIONS ................................................................ 35

VII. CAUSES OF ACTION..................................................................................... 39

COUNT I  FRAUDULENT CONCEALMENT (By All Plaintiffs and All Classes
          described above) ......................................................................................... 39

COUNT II  UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS ACTS AND
          PRACTICES (Violation of California Business and Professions Code § 17200, *et
          seq.*) (By Plaintiffs Washington, Ronquillo, Balero, and the California Class).................. 41

COUNT III  VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS  CODE
§ 17500, *et seq.*(By Plaintiffs Washington, Ronquillo, Balero, and the California
Class)........................................................................................................... 43

COUNT IV  VIOLATION OF CALIFORNIA CONSUMER  LEGAL REMEDIES ACT,
CAL. CIV. CODE § 1750, *et seq.* (By Plaintiffs Washington, Ronquillo, Balero,
and the California Class)............................................................................... 44

COUNT V  VIOLATION OF THE FLORIDA DECEPTIVE AND  UNFAIR TRADE
PRACTICES ACT (By Plaintiffs Brandt and the Florida Class)....................................... 46

COUNT VI  VIOLATION OF NY GENERAL BUS. LAW § 349, *et seq.* (By Plaintiffs
Clouden and the New York Class) ..................................................................... 48

COUNT VII  VIOLATION OF THE TEXAS DECEPTIVE  TRADE PRACTICES ACT
("DTPA")  (By Plaintiffs Parnella and the Texas Class) .................................... 50

COUNT VIII  VIOLATION OF THE ILLINOIS CONSUMER FRAUD  AND
DECEPTIVE BUSINESS PRACTICES ACT (815 ILL. COMP. STAT. 505/1, *et
seq.*) (By Plaintiffs Burke and the Illinois Class)................................................ 53

COUNT IX  VIOLATION OF BREACH OF IMPLIED WARRANTY (By all Plaintiffs
and classes discussed above) ............................................................................. 55

COUNT X  VIOLATION OF THE MAGNUSON-MOSS WARRANTY  ACT, 15
U.S.C. § 2301, *ET. SEQ.* ("MMWA") (Asserted Against Lumber Liquidators on
Behalf of all Plaintiffs and Classes)................................................................... 57

COUNT XI  NEGLIGENT MISREPRESENTATION (By all Plaintiffs and Classes
described above under their respective laws) .................................................... 59

COUNT XII DECLARATORY RELIEF............................................................................... 60

PRAYER FOR RELIEF .......................................................................................................... 60

DEMAND FOR JURY TRIAL ............................................................................................... 61

010503-11 809817 V1

## I.    INTRODUCTION

1.    Defendant Lumber Liquidators, Inc. sold composite laminate flooring products manufactured in China that has formaldehyde levels that were many times higher than levels in flooring manufactured in North America and at levels known to pose serious health risks.  The formaldehyde levels from certain Lumber Liquidators products far exceed the maximums allowed by the California Air Resources Board ("CARB").  Nonetheless, Lumber Liquidators has continued to specifically and falsely label these products as being compliant with all CARB formaldehyde standards.  As a result, consumers have been buying flooring products from Defendant that they would not have had Defendant disclosed the truth.

2.    Laminate wood flooring is generally composed of a base layer of pressed composite wood (particle board or medium-density fiberboard), which is a mixture of sawdust or wood particles bonded together with glue or resin.  The base layer is covered with a thin veneer or other material such as a photographic image of wood, affixed as a decorative surface.  This decorative surface can be as thin as only a few millimeters.  Other than being a thin barrier, it contains no properties that change the chemical properties of the materials in the base layer or that provide anything more than rudimentary safeguards to prevent the release of chemicals such as formaldehyde that are contained in the base layer.

3.    Formaldehyde is a common ingredient in the glue used in the composite laminate flooring base layer.  It is often used to reduce the price of manufacturing the base layer.  If used in low levels, the formaldehyde will quickly dissipate during installation.  However, if used in higher levels, the formaldehyde is released as a gas that emanates from the flooring over many years.  Depending on the concentration of formaldehyde in the base layer, the formaldehyde will be released from the flooring and into the surrounding air – even when covered with a veneer at

- 1 -

levels that most regulatory agencies consider to be unsafe even after exposure of only 8 hours, let alone for chronic exposure.

4.     While composite floors containing formaldehyde will typically "off gas," in that the amount of formaldehyde released into the surrounding air will decrease after a period of approximately 18 to 24 months, the remaining formaldehyde will hydrolyze and continue to be released at constant levels over a period of years.

5.     Short-term exposure to formaldehyde for periods has short as 15 minutes has been shown to cause respiratory irritation, headaches, coughing, dizziness, and nausea.  Chronic and long-term exposure to formaldehyde is linked to increased risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia.  Formaldehyde also causes burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain, and nausea.  It has also been linked to the exacerbation of asthma in formaldehyde-sensitive individuals and poses a particularly acute risk to children.

6.     In 2007, CARB adopted regulations designed to reduce public exposure to formaldehyde.  The regulations established two phases of emissions standards that composite laminate flooring products must meet: an initial Phase 1, and later a more stringent Phase 2.  These regulations require that any composite wood contained in flooring products be certified as having been manufactured using compliant wood products throughout their production.

7.     Lumber Liquidators supervises and controls the manufacturing of composite laminate flooring products in several mills in China.  Lumber Liquidators also packages, distributes, markets, and/or sells composite laminate flooring products that have been manufactured in China to consumers in California and throughout the country.

- 2 -

8.     From October 2013 through November 2014, three accredited laboratories tested the formaldehyde emissions of laminate wood flooring from several nationwide retail outlets, including Home Depot, Lowe's, and Lumber Liquidators.  These laboratories employed testing methods that are consistent with CARB regulations and with standard operating procedures CARB has recommended.  Of the dozens of products tested, by far the highest formaldehyde levels were found in the composite laminate flooring sold by Lumber Liquidators that was produced in China.  The levels of formaldehyde gas emitted by these Chinese-made Lumber Liquidators products were several times the maximum CARB limits and exceeded the standards promulgated in the Toxic Substances Control Act, 15 U.S.C. § 2601, *et seq.* (Subchapter VI, 15 U.S.C. §  2697: Formaldehyde Standards of Composite Wood Products).  Similar products manufactured in North America generally had much lower formaldehyde levels that complied with the formaldehyde emission standards promulgated by CARB.  Similar products tested from Lumber Liquidators' competitors – especially those manufactured in the United States – also showed significantly lower formaldehyde levels that generally complied with the CARB formaldehyde emission standards.  The list of Lumber Liquidator products that have been tested and found to exceed the CARB limit for formaldehyde emissions is set forth in paragraph 39 below.

9.     Nonetheless, labels on Lumber Liquidators' Chinese-made composite laminate flooring products that are sold throughout the United States, state that the products comply with strict formaldehyde emission standards promulgated by CARB by stating "California 93120 Phase 2 Compliant Formaldehyde."

10.     In 2014 and early 2015, the television news program, *60 Minutes*, conducted an independent investigation into Lumber Liquidators' Chinese-made flooring products.

- 3 -

Investigators purchased 31 boxes of various Chinese-made flooring products from various

Lumber Liquidators stores around the country and sent the samples for testing at two certified

labs.  Of the 31 samples, only one was compliant with CARB formaldehyde emissions standards.

"Some were more than 13 times over the California limit."[1]

11.     *60 Minutes* also sent undercover investigators to three different mills in China that

manufacture laminates and composite flooring on behalf of Lumber Liquidators.  *60 Minutes*

reported that:

> Employees at the mills openly admitted that they use core
> boards with higher levels of formaldehyde to make
> Lumber Liquidators laminates, saving the company 10-15
> percent on the price.  At all three mills they also admitted
> [to] falsely labeling the company's laminate flooring as
> CARB [compliant].[2]

12.     In addition, well over 100 deconstructive tests commissioned by private attorneys

and performed by multiple accredited laboratories, independent of one another, has

overwhelmingly shown Lumber Liquidators' Chinese-manufactured composite flooring to

contain formaldehyde at levels that exceed the limits prescribed by CARB, the Toxic Substances

Control Act, and the limits commonly recommended as being safe for chronic breathing in a

home environment.  In 103 deconstructive tests conducted by three separate accredited

laboratories between June 2013 and January 2015, *every single sample* of Lumber Liquidators'

composite flooring that was manufactured in China exceeded CARB limits.  Samples exceeded

CARB limits by nearly 7 times on average, and samples contained formaldehyde at levels as

high as 17 times CARB limits.

---

[1]  Lumber Liquidators Linked to Health and Safety Violations, *60 Minutes* (Mar. 1, 2015), available at http://www.cbsnews.com/news/lumber-liquidators-linked-to -health-and-safety- violations/ (last visited March 4, 2015).

[2] *Id.*

13.    Lumber Liquidators does not give consumers any warnings about excessive or unlawful formaldehyde levels in its composite laminate flooring products.  Instead, along with its product labels, it represents on its website and warranties that its flooring products comply with strict formaldehyde standards.  Lumber Liquidators has made false and misleading statements that its flooring products comply with CARB formaldehyde standards, and the even more stringent European formaldehyde standards.  Lumber Liquidators' website falsely states, "[W]e not only comply with laws-we exceed them" and "Highest Quality Flooring.  GUARANTEED.[3]

14.    In the aftermath of the media attention on the dangers of formaldehyde in its products, Lumber Liquidators launched a deceptive marketing campaign to publicly discredit the testing methods the laboratories used and to cover up the unsafe nature of the products it sold.  Lumber Liquidators began offering free do-it-yourself air testing kits to customers.  Unlike the laboratory tests, the do-it-yourself testing kits Lumber Liquidators is offering do not comply with accepted industry standards, are inherently unreliable, and are likely to under-report the amount of formaldehyde present.

15.    Lumber Liquidators exacerbated the potential harm by providing misleading communication to customers along with the results of its do-it-yourself testing kits.  Lumber Liquidators falsely reported to customers that the formaldehyde content in the air they tested was within safe limits when it was not.  Lumber Liquidators deliberately misled consumers into believing that the levels of formaldehyde in their homes are "normal" and safe, when in fact they may be extremely hazardous to the health of the families living in them.

16.    Each Plaintiff purchased and installed a Lumber Liquidators product that was manufactured in China, labeled as being CARB compliant, and was of a type found to have

---

[3]  http://www.lumberliquidators.com/ll/flooring/quality?WT.ad-GLOBAL FOOTER Quality (last visited on March 2, 2015) (page unavailable as of March 4, 2015).

formaldehyde levels that exceed CARB limits.  Plaintiffs seek to represent themselves and similarly situated persons in California, Florida, Texas, New York, and Illinois who have purchased Defendant's composite laminate flooring products that were manufactured in China, labeled as CARB compliant, and sold to consumers in the respective states in which they reside ("the putative Classes").  Plaintiffs seek restitution of monies they and the putative Classes spent on Defendant's flooring products, consequential damages, injunctive relief enjoining Defendant's ongoing unlawful, unfair, and fraudulent business practices, and other damages on behalf of themselves and the putative Classes.

## II.     JURISDICTION

17.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in each of the proposed classes and at least one member of the class of plaintiffs is a citizen of a state different from the Defendant.  Lumber Liquidators is, on information and belief, a citizen of Virginia.  Plaintiffs are citizens of California, Florida, New York, Texas, and Illinois.

18.     This Court has personal jurisdiction over the parties in this action by the fact that Defendant is a corporation that is licensed to do business in the state of Virginia or otherwise conduct business in the state of Virginia.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), both because Defendant regularly transacts business in this District, and based on the transfer order of the Judicial Panel on Multidistrict Litigation.

## III.     PARTIES

20.     Plaintiffs Lila and Laura Washington are residents of San Jose, California, and are domiciled in California.

21.     Plaintiffs Maria and Romualdo Ronquillo are residents of Fremont, California, and are domiciled in California.

22.     Plaintiff Joseph Michael Balero is a resident of Alameda County, California, and is domiciled in California.

23.     Plaintiffs Ryan and Kristin Brandt are residents of Fort Myers, Florida, and are domiciled in Florida.

24.     Plaintiffs Devin and Sara Clouden are residents of Hamburg, New York, and are domiciled in New York.

25.     Plaintiffs Kevin and Julie Parnella are residents of Plano, Texas, and are domiciled in Texas.

26.     Plaintiffs Shawn and Tanya Burke are residents of West Dundee, Illinois, and are domiciled in Illinois.

27.     Defendant Lumber Liquidators, Inc. is a Delaware corporation with its headquarters and principal place of business at 3000 John Deere Rd., Toano, VA 23168. Lumber Liquidators, Inc. distributes, markets, and/or sells composite laminate flooring products and actively conducts business throughout the United States.

## IV.     FACTUAL ALLEGATIONS

**A.     Lumber Liquidators Represents that its Laminate Wood Flooring Products Meet California's Strict Emissions Standards for Products it Sells in Every State**

28.     The emissions limits set by the California Air Resources Board ("CARB") are among the most comprehensive and exacting in the country.  These standards have served as a model for national standards being considered by the Environmental Protection Agency.

29.     Defendant invokes these CARB standards and represents to consumers on its website, on its product packaging, and in various other materials that its composite laminate

010503-11  809817 V1

flooring products meet the CARB standards for formaldehyde emissions and are therefore safe.

Defendant unequivocally states that though CARB only legally governs products sold in the state

of California, Lumber Liquidators ensures that its composite laminate flooring products meet the

CARB standard no matter where they are sold.

30.   Lumber Liquidators' website states as follows:

Is Lumber Liquidators Compliant with the California law?

**Laminate and engineered flooring products sold by
Lumber Liquidators are purchased from mills whose
production method has been certified by a Third
Party Certifier approved by the State of California to
meet the CARB standards.**  The scope of the
certification by the Third Party Certifier includes the
confirmation that the manufacturer has implemented the
quality systems, process controls, and testing procedures
outlined by CARB and that their products conform to the
specified regulation limits.  The Third Party Certifier also
provides ongoing oversight to validate the
manufacturers' compliance and manufacturers must be
periodically re-certified.

Does CARB only apply to California?

Though it currently applies only to products sold in
California, **Lumber Liquidators made a decision to
require all of our vendors to comply with the
California Air Resources Board regulations
regardless of whether we intended** to sell the
products in California or any other state/country.

What extra steps does Lumber Liquidators take
to ensure compliance?

In addition to the California Air Resources Board
requirements, **Lumber Liquidators regularly selects
one or more finished products from each of its
suppliers and submits them for independent third-
party lab testing.**  This is done as a monitoring
activity to validate ongoing quality control.[4]

---

[4] http://www.lumberliquidators com/11/flooring/ca-air-resources-board-
regulations?Wt.ad – GLOBAL_FOOTER_CaliRegCARB (last visited on March 4, 2015)
(emphasis in original).

- 8 -

B.     **California's Formaldehyde Standards**

31.     In 1988, the State of California officially listed formaldehyde (gas) as a chemical known to cause cancer.

32.     In 1992, CARB formally listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

33.     CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007.  The formaldehyde emission standards became effective January 2009 and set decreasing limits in two phases.  CAL. CODE REGS. tit. 17, § 93120.2(a).

34.     The CARB regulations apply to composite wood ("laminate") products including flooring.  CAL CODE REGS. tit. 17, § 93120.2(a).

35.     The CARB Phase 1 Emission Standard for MDF in effect from January 1, 2009, to December 31, 2010, limited formaldehyde emissions to 0.21 parts per million ("ppm").  The Phase 2 Emission Standard for MDF dictates that, as of January 1, 2011, MDF flooring products such as those involved in this action must emit no more than 0.11 ppm of formaldehyde.  The CARB Phase 1 Emission Standard for Thin MDF, which was in effect from January 1, 2009, to December 31, 2011, limited formaldehyde emissions to 0.21 ppm.  The CARB Phase 2 Emission Standard for Thin MDF dictates that, as of January 1, 2012, thin MDF flooring products such as those involved in this action must emit no more than 0.13 ppm of formaldehyde.[5]

36.     The CARB regulations specify the test methods that may be used to determine whether products meet the CARB limit.  A product does not comply with CARB emission standards if the composite wood product was produced by an uncertified manufacturer or used

---

[5] CAL. CODE REGS. tit. 17, § 93120.2(a).  (Hereinafter, the formaldehyde emission standards for both MDF and Thin MDF will be referred to as the "CARB limit.")

certain materials without CARB approval, or if record of testing conducted by the manufacturer or a third party certifier show that a particular composite wood product exceeded the CARB limit.[6]  In addition, a product does not comply with CARB emission standards if:

> A composite wood product produced by a manufacturer is tested at any time after it is manufactured, using either the compliance test method specified in section 93120.9 (a) or the enforcement test method specified in section 93120.9(b), and is found to exceed the applicable emission standard specified in Table 1.[7]

37.    Compliance with the CARB limits is based on the results of testing the composite wood products contained in finished goods, not the finished goods themselves.  The compliance test method specified in section 93120.9(a) incorporates the test method specified in ASTM D 6007-02, as promulgated by the America Society for Testing and Materials.

38.    In September 2013, CARB issued a document entitled Standard Operating Procedures for Finished Good Test Specimen Preparation Prior to Analysis of Formaldehyde Emissions from Composite Wood Products.  These Standard Operating Procedures direct the methods to be used to deconstruct finished goods and to remove the coating or laminate before testing the underlying composite wood product for formaldehyde emissions.

C.    **Lumber Liquidators' Composite Laminate Flooring Products**

39.    Defendant supervises and/or controls the manufacturing and packaging of composite laminate flooring products **in** China that Defendant then distributes, markets, and/or sells in California and throughout the country.  Those composite laminate flooring products contain formaldehyde and emit formaldehyde gas at levels that exceed, and sometimes grossly exceed, the CARB limit.  Those composite laminate flooring products include the following:

a.    8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring;

---

[6] CAL. CODE REGS. tit. 17, § 93120.2(a)(1), (2).
[7] CAL. CODE REGS. tit. 17, § 93120.2(a)(3).

b.   8 mm Dream Home Nirvana French Oak Laminate Flooring;

c.   12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring;

d.   12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring;

e.   12 mm Dream Home St. James Oceanside Plank Laminate Flooring;

f.   12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate
     Flooring;

g.   15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring;

h.   12 mm Dream Home Kensington Manor Imperial Teak Laminate Flooring;

i.   12 mm Dream Home St. James Vintner's Reserve Laminate Flooring;

j.   12 mm Dream Home Kensington Manor Cape Doctor Maple Laminate Flooring;

k.   12 mm Dream Home St. James Golden Acacia Laminate Flooring;

l.   12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring;

m.  12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring;

n.   12 mm Dream Home Ispiri America's Mission Olive Laminate Flooring;

o.   12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring;

p.   12 mm Dream Home Kensington Manor Summer Retreat Teak Laminate
     Flooring;

q.   12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring;

r.   12 mm Dream Home St. James Brazilian Koa Laminate Flooring;

s.   12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;

t.   12 mm Dream Home St. James Nantucket Beech Laminate Flooring;

u.   12 mm Dream Home St. James African Mahogany Laminate Flooring;

- 11 -

  v. 12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate

   Flooring;

  w. 10 mm Delaware Driftwood Laminate Flooring;

  x. 12 mm Dream Home Ispiri African Thuya Burlwood Laminate Flooring;

  y. 12 mm Antique Acacia Laminate Flooring;

  z. Brazilian Cherry Laminate Flooring;

  aa. 12 mm Dream Home St. James Burnet Road Russet;

  bb. 12 mm Dream Home St. James Chimney Rock Charcoal;

  cc. 12 mm Dream Home Kensington Manor High Sholes Hickory;

  dd. 12 mm Dream Home St. James Horizontal Natural Bamboo;

  ee. 12 mm Dream Home St. James Meade's Ranch Weathered Wood;

  ff. 12 mm Dream Home Ispiri Mill River Walnut;

  gg. 12 mm Dream Home St. James Scarlet Strand Bamboo;

  hh. 12 mm Dream Home Ispiri Sloane Street Teak; and

  ii. 8 mm Bristol County Cherry Laminate Flooring.

40. CARB regulations apply to all of the above-listed flooring products.

41. On information and belief, each of the Lumber Liquidators composite laminate flooring products listed in paragraph 39 above are manufactured in China using a common formula, design, or process.

42. On information and belief, each of the Lumber Liquidators composite laminate flooring products listed in paragraph 39 contain formaldehyde gas at levels that exceed the CARB limits and are several times higher than comparable products.

- 12 -

43.     Between June 2013 and January 2015, at least three separate laboratories, each accredited by the International Accreditation Service, conducted tests of no fewer than 134 samples from among the Lumber Liquidators flooring products listed in paragraph 39 above. Each test was conducted and documented in accordance with ASTM D 6007-02 as mandated by CARB regulations.  The results showed that 133 of the 134 samples emitted formaldehyde at levels exceeding CARB limits.

## D.     Lumber Liquidators Misrepresents that its Composite Laminate Flooring Products Meet California Emissions Standards

44.     Despite unlawful levels of formaldehyde emissions from its composite laminate flooring products, Defendant misrepresents to consumers on its website, product packaging, and warranties that its composite laminate flooring products meet the CARB standards for formaldehyde emissions.

45.     After the dangerous formaldehyde levels in Lumber Liquidators' products was featured on the news program *60 Minutes*, Lumber Liquidator responded by posting a letter from its Chairman on its website stating:

> Let me make one thing very clear – our laminate products, all of our products, are 100% safe….
>
> We comply with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products – the most stringent rules in the country. We take our commitment to safety even further by employing compliance personnel around the world and utilizing the latest in cutting-edge technology to provide our customers with top quality and high value flooring.[8]

---

[8] http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/ (last visited March 4, 2015).

46.     In addition, the product packaging for Lumber Liquidators' composite laminate flooring states: "CARB … CALIFORNIA 93120 Phase 2 Compliant Formaldehyde."  On information and belief, this statement is presented on all Lumber Liquidators' composite laminate flooring product packaging regardless of whether the flooring inside the packaging complies with the CARB standards.

47.     Lumber Liquidators' purchase orders come with a warranty stating that the customer's purchased flooring products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations."

48.     Instead of warning consumers about formaldehyde levels in its composite laminate flooring products, Lumber Liquidators' website states that it has Third Party Certifiers approve its flooring products to meet CARB standards.

Regulations and Lumber Liquidators' Compliance

The California Air Reform Bill (CARB) requires that products containing Hardwood Plywood Veneer Core (HWP-VC), Hardwood Plywood Composite Core (HWP-CC), Particleboard and MDF be tested for emissions and products not meeting the strict standards for emissions may not be sold in California.

The Environmental Protection Agency has drafted national standards for formaldehyde emissions in composite wood products that are similar to those of California. Those standards have not yet been enacted.

All laminates and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards.  The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified

- 14 -

formaldehyde- emission¯limits.  The Third Party-
Certifier also provides ongoing oversight to validate the
manufacturers' compliance and manufacturers must be
periodically re-certified.  Though it currently applies¯
only to products sold in California, Lumber Liquidators
made a decision to require all of our suppliers to comply
with CARB regardless of whether we intended to-sell.-
the products - in California or-any other state/country.
In addition, our suppliers manufacture their products in
accordance with the European standard which has
stricter guidelines than the
California.  In addition to the CARB requirements,
Lumber Liquidators regularly selects one or more
products from each of its suppliers and submits them for
independent third-party lab testing. This is done as a
monitoring activity to validate ongoing compliance.[9]

49.    Notwithstanding the above assurances, on a conference call with investors,

Lumber Liquidators' CEO conceded that deconstructive tests that Lumber Liquidators itself

conducted before the *60 Minutes* broadcast had even aired revealed high levels of

formaldehyde.[10]

50.    Lumber Liquidators materially misrepresented the safety of its composite

laminate flooring products by advertising and representing that its flooring products are

compliant with the CARB limit when in fact they did not.

51.    Lumber Liquidators materially omitted any disclosure to consumers that they

were buying composite laminate flooring products with excessive or unlawfully high levels of

formaldehyde compared to U.S.-manufactured products.

52.    These composite laminate flooring products have been sold by Defendant for use

in California and throughout the country for more than four years.

---

[9] http://www.lumberliquidators.com/ll/flooring/Flooring101?Wt.ad=RIGHTNAV_
Flooring101 (last visited March 4, 2015). *See* http://www.cbsnews.com/news/lumber-liquidators-
ceo-admits-tests-showed-high- formaldehyde-levels/ (last visited September 11, 2015).

[10]   *See* http://www.cbsnews.com/news/lumber-liquidators-ceo-admits-tests-showed-high-
formaldehyde-levels/ (last visited September 11, 2015).

010503-11  809817 V1

53.     Defendant continued to distribute and sell its composite laminate flooring products to customers in California and throughout the country with the representation that they are CARB compliant, long after it knew they were not compliant.

54.     On information and belief, at all times relevant to this action, Lumber Liquidators has knowingly misrepresented its composite laminate flooring products as CARB compliant and knowingly failed to disclose to consumers the excessive and unlawful levels of formaldehyde emissions from its composite laminate flooring products.

55.     At the same time that Defendant made public statements to consumers that the composite laminate flooring products it sells are sourced from mills whose production methods are CARB compliant, that the products conform to CARB's specified formaldehyde emission limits, and the measures Lumber Liquidators takes to ensure full compliance by its suppliers – all to increase its sales – Defendant said just the opposite to the SEC, stating, "While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, *we do not control our suppliers*.  Accordingly, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible manner.  Violation of environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and responsible manner could … expose us to legal risks as a result of our purchase of product from non-compliant suppliers."[11]

56.     Despite its stated concern that its suppliers might not comply with environmental regulations, Defendant has failed to sufficiently exercise its quality control over those suppliers

---

[11] Lumber Liquidators' February 25, 2014 10-K at p. 14 (available at http://investors.lumberliquidators.com/index.php?o=25&s=127) (emphasis added).  In the same filing, Lumber Liquidators represents that it oversees quality control in its Chinese mills:

"We are able to set demanding specifications for product quality and our own quality control and assurance teams are on-site at the mills, coordinating inspection and assurance procedures." *Id*. at p. 5.

- 16 -

to ensure that they comply with CARB standards, and Defendant continued to sell to California consumers, and to consumers throughout the country, composite laminate flooring products that Defendant obtained from those suppliers.

57.     On June 20, 2013, the news website *Seeking Alpha* published a lengthy article based on a letter to CARB.  The letter and article documented high formaldehyde levels in Chinese-made composite laminate flooring sold by Lumber Liquidators, as shown by tests a certified laboratory conducted on three samples of Chinese-made composite laminate flooring sold by Lumber Liquidators.  Enclosed with the letter were the actual test results showing that the tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits three and one-half times the maximum formaldehyde emission level.  Nonetheless, the letter notes that Lumber Liquidators labeled the product as being CARB compliant.

58.     On information and belief, high formaldehyde content resins and glues are less expensive and dry more quickly than low formaldehyde glues and resins.  By using high formaldehyde content resins and glues rather than low formaldehyde content resins and glues, Lumber Liquidators' Chinese manufacturers are able to produce composite laminate flooring more quickly and at higher volumes thereby reducing costs and generating greater profits for Lumber Liquidators.

59.     On or about November 26, 2013, a putative federal securities class action lawsuit was filed against Lumber Liquidators in the United States District Court in the Eastern District of Virginia based on drops in the stock price following the *Seeking Alpha* article and its allegations concerning the formaldehyde emissions from Defendant's composite laminate flooring products. *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, No. 4:13-cv-00157 (E.D. Va.).  This case is currently pending.  Lumber Liquidators was made aware during the pendency of this and other

lawsuits of complaints and allegations that its composite laminate flooring products from China

emit formaldehyde gas at levels that violate the CARB limit.

60.     Based on lawsuits, articles, and blog posts, and on its own first-hand knowledge,

Defendant knew or should have known that its composite laminate flooring products were not

compliant with CARB standards.  Despite this knowledge, Defendant failed to reformulate its

flooring products so that they are CARB compliant and failed to disclose to consumers that these

products emit unlawful levels of formaldehyde.  Instead, Defendant has sold composite laminate

flooring products in California and throughout the country that exceed the CARB limit while

continually representing to consumers that those products are CARB compliant.

61.     In response to the *60 Minutes* report, Lumber Liquidators launched a campaign of

disinformation in which it attacked the laboratories that conducted the tests showing that its

products exceeded CARB limits for formaldehyde.  Lumber Liquidators claimed that the tests

the laboratories conducted were improper because the laboratories removed the laminate coating

before testing the composite core of the Lumber Liquidators flooring.  In fact, CARB specifically

recommends that laminate coating be removed before testing.

62.     Lumber Liquidators next began offering a free home testing kit to customers who

purchased its Chinese-made composite flooring products.  The third party providing the home

testing kits is not independent, but is being paid by Lumber Liquidators.  The testing kits being

offered do not use testing methods that are commonly accepted and that CARB recommends.

The test Lumber Liquidators is offering is inherently unreliable, designed to under-report the

formaldehyde levels present in the composite flooring, and is not designed to measure

formaldehyde emissions from a particular source.

010503-11  809817 V1

63.     Even when Lumber Liquidators' testing kit shows that a home contains concentrations of formaldehyde that have been recognized to be dangerous to human health when inhaled for extended periods, Lumber Liquidators has continued to cover up these findings. Lumber Liquidators has sought to mislead consumers into believing both that the levels of formaldehyde in their homes are "normal" and "safe," when in fact they may be extremely hazardous, and that the Lumber Liquidators flooring is not the cause of the elevated formaldehyde levels in their homes.

64.     In cases where results from the laboratory it employs show elevated levels of formaldehyde, Lumber Liquidators first sends the customer a lengthy questionnaire that it uses to shirk responsibility by suggesting that sources of the elevated formaldehyde it found in the home were something other than the Lumber Liquidators flooring.

65.     In cases where its tests show results as high as 0.08 parts per million of formaldehyde, Lumber Liquidators has sent letters that state:

> Your results show that formaldehyde levels in your home fall within or below the range of normal indoor air (0.020 to 0.100 parts per million), according to the [EPA's] recent study of formaldehyde.  Your level of formaldehyde is similar to the amounts measured in typical U.S. homes.
>
> Based on your test results, it does not appear that your floor is contributing to any abnormal exposure to formaldehyde in your home.

66.     The above statements constitute material misrepresentations of fact as to what the EPA has found, levels of formaldehyde that are considered "normal" and "safe" in the United States, and the conclusion that the floors in the home are not contributing to any abnormal exposure to formaldehyde.

67.     Rather than seek to effectively remedy the harm and the risks to its customers' health and safety caused by its formaldehyde-laden flooring products, Lumber Liquidators has instead sought to cover up the dangers inherent in its products with misinformation and with a disingenuous public relations campaign that is designed to mislead its customers.  By offering unreliable testing, by seeking to discredit the laboratories that conducted the tests finding that its products exceeded CARB limits for formaldehyde, and by promulgating misleading information regarding the dangers and properties of formaldehyde, Lumber Liquidators' actions will cause people to believe the floors in their homes are safe when they are not and will expose them to even greater risk than if Lumber Liquidators had honestly addressed the findings of multiple laboratories.

68.     In light of the false representations Lumber Liquidators has made regarding formaldehyde levels, and in light of the health risks posed by formaldehyde, Plaintiffs and members of the Classes reasonably fear for their safety in allowing the composite laminate flooring to remain in their homes.  It would therefore be reasonable and prudent to incur the cost of removing and replacing the laminate flooring rather than continue to incur the risks posed by the laminate flooring that may contain high levels of formaldehyde.

## V.     FACTS RELATING TO NAMED PLAINTIFFS

### A.     Laura Washington and Lila Washington

69.     Laura Washington shares a home with her mother, Lila Washington, in San Jose, California.  In October 2014, the Washingtons purchased approximately 300 square feet of 12 mm St. James Brazilian Koa Laminate Flooring at a Lumber Liquidators store located in San Jose, California.  As stated on the packaging, the flooring was produced at a laminate mill in China.

70.     The Washingtons purchased the composite laminate flooring for the purpose of installing it in their home.  The Washingtons specifically chose laminate flooring because they believed it would be safer and less likely to exacerbate Lila Washington's breathing difficulties than carpeting or other flooring options.

71.     The Washingtons were aware of the risks inherent in formaldehyde and the risk that formaldehyde has been used in certain building materials.  They were also aware that California has some of the most stringent regulations in the country.  As residents of California, they expected that the flooring products they were considering complied with California regulations for all dangerous substances, including formaldehyde.

72.     The Washingtons viewed Lumber Liquidators' website and saw and heard various Lumber Liquidators advertisements.  They saw the representations Lumber Liquidators made regarding the safety and compliance of its products.

73.     At the time they purchased the composite laminate flooring from Lumber Liquidators, the Washingtons noted labels stating that the product was "California … Phase 2 Compliant for Formaldehyde."

74.     The Washingtons relied on the representations that the composite laminate flooring they were purchasing complied with California regulations regarding formaldehyde. They would not have purchased the product absent this or a similar representation informing them that the product did not contain elevated levels of formaldehyde.

75.     At the time that Plaintiffs purchased their composite laminate flooring, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.

76.     At the time of the purchase, Lumber Liquidators also failed to inform the Washingtons that the composite laminate flooring product they purchased actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to the State of California to cause cancer and to exacerbate the harms to a person who already has cancer.

77.     The Washingtons had the Lumber Liquidators flooring that they purchased installed in their home by a relative who followed Lumber Liquidators' instructions.  The installation involved cutting pieces of the laminate flooring to size and installing cut pieces in the home.

78.     On March 1, 2015, the Washingtons learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product were false.  A sample of the laminate wood flooring product that the Washingtons purchased from Defendant was tested by a certified laboratory using CARB testing methodology.  The results of the lab test show that the Washington's laminate flooring product emits formaldehyde gas at a level that exceeds applicable CARB limits for formaldehyde emissions from MDF.

79.     Had Lumber Liquidators disclosed the formaldehyde levels in its products, the Washingtons would not have purchased it.

80.     The Washingtons have suffered injury as a result of Lumber Liquidators' misrepresentations and omissions in amounts that include the purchase price of the floors, the cost of installing the floors, and the costs involved in replacing the floors.

**B.     Maria and Romualdo Ronquillo**

81.     In August 2014, Plaintiffs Maria and Romualdo Ronquillo purchased approximately 500 square feet of 12 mm St. James Golden Acacia Laminate Flooring at a Lumber Liquidators store located in San Leandro, California.  As stated on the packaging, the flooring was produced at a laminate mill in China.

- 22 -

82.     The Ronquillos purchased the composite laminate flooring for the purpose of installing it in their home that they share with Maria Ronquillo's 83-year-old mother.  Maria Ronquillo suffers from asthma and seasonal allergies.  The Ronquillos were aware of the risks inherent in formaldehyde and the risk that formaldehyde has been used in certain building materials.  They are also aware that California has some of the most stringent regulations in the country.  When shopping for flooring products they specifically sought to ensure that the flooring products they were considering complied with California regulations for all dangerous substances, including formaldehyde.

83.     Prior to purchasing the composite laminate flooring from Lumber Liquidators, the Ronquillos viewed Lumber Liquidators' website and saw the representations Lumber Liquidators made regarding the safety and compliance of its products.  The Ronquillos also noted the label, which stated that the product was "California … Phase 2 Compliant for Formaldehyde."

84.     The Ronquillos relied on the representations that the composite laminate flooring they were purchasing complied with California regulations regarding formaldehyde.  They would not have purchased the product absent this or a similar representation informing them that the product did not contain elevated levels of formaldehyde.

85.     At the time that Plaintiffs purchased their composite laminate flooring, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.

86.     At the time of the purchase, Lumber Liquidators also failed to inform the Ronquillos that the composite laminate flooring product they purchased actually exceeded the CARB formaldehyde emission limits, and that it contained far more formaldehyde than comparable U.S.-manufactured products.

- 23 -

87.     The Ronquillos had part of the Lumber Liquidators flooring that they purchased installed in their home by an installation professional.

88.     On March 1, 2015, the Ronquillos learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product may have been false.  A sample of the laminate wood flooring product that the Ronquillos purchased from Defendant was tested by a certified laboratory using CARB testing methodology.  The results of the lab test show that the Ronquillos' laminate flooring emits formaldehyde at a level that exceeds applicable CARB limits for formaldehyde emissions from MDF.

89.     Had the Lumber Liquidators composite laminate flooring been CARB compliant as represented, the Ronquillos would have been satisfied with their purchase.

90.     The Ronquillos would not have purchased the Lumber Liquidators composite laminate flooring had they known there was a risk that its actual formaldehyde content exceeded the CARB standards.  The Ronquillos have suffered injury as a result of Lumber Liquidators' misrepresentations and omissions in amounts that include the purchase price of the floors, the cost of installing the floors, and the costs involved in replacing the floors.

C.     **Joseph Michael Balero**

91.     On March 3, 2013, Plaintiff Joseph Michael Balero purchased 8 mm Dream Home Nirvana French Oak Laminate Flooring at a Lumber Liquidators store located in Livermore, California, for the purpose of having it installed in the home he shares with his family.  As stated on the packaging, the flooring was produced at a laminate mill in China.

92.     Among the reasons Mr. Balero chose laminate flooring was because he believed it would be healthier for his child, who has a condition that includes an acute respiratory sensitivity

- 24 -

to airborne chemicals.  Mr. Balero was therefore concerned about the absence of toxic materials in the flooring he was going to purchase.

93.     At the time that Mr. Balero purchased this laminate wood flooring, Lumber Liquidators falsely represented that the product was compliant with CARB formaldehyde emission standards.  At the time of the purchase, Lumber Liquidators also failed to inform Mr. Balero that the laminate wood flooring product he purchased actually exceeded the CARB formaldehyde emission limits and contained far more formaldehyde than comparable U.S.-manufactured products.

94.     Mr. Balero relied on Lumber Liquidators' misrepresentations and its omissions regarding compliance with CARB formaldehyde emission standards when deciding to purchase the laminate wood flooring products and, as a result, paid Lumber Liquidators for products he would not have otherwise purchased.

95.     In August or September 2014, Mr. Balero contacted Lumber Liquidators to ask about the safety of his flooring.  On September 4, 2014, a Lumber Liquidators representative responded by assuring Mr. Balero that "Lumber Liquidators' products are also independently tested to ensure compliance with the stringent California Air Resource Board (CARB) emission standards … all of the flooring we sell meets the highest quality environmental standards."

96.     On or about October 17, 2014, however, a sample of the laminate wood flooring product that Mr. Balero purchased from Defendant was tested by a certified laboratory using CARB testing methodology.  The results of the lab test show that Mr. Balero's laminate flooring product emits formaldehyde gas at a level that exceeds applicable CARB limits for formaldehyde emissions from Thin MDF.

- 25 -

97.     Because his flooring exceeds the CARB formaldehyde emission limit, Mr. Balero has incurred the expense of having his flooring replaced.

98.     Had the Lumber Liquidators composite laminate flooring been CARB compliant as represented, Mr. Balero would have been satisfied with his purchase.

99.     Mr. Balero would not have purchased the Lumber Liquidators composite laminate flooring had he known there was a risk that its actual formaldehyde content exceeded the CARB standards.  Mr. Balero has suffered injury as a result of Lumber Liquidators' misrepresentations and omissions in amounts that include the purchase price of the floors, the cost of installing the floors, and the costs involved in replacing the floors.

**D.     Ryan and Kristin Brandt**

100.     In August 2014, Plaintiffs Ryan and Kristin Brandt purchased approximately 370 square feet of 12 mm Dream Home St. James Burnet Road Russet Laminate Flooring at a Lumber Liquidators store located in Fort Meyers, Florida.  As stated on the packages, this flooring product was produced at a laminate mill located in China.

101.     Kristin Brandt was pregnant with their first child at the time the Brandts purchased the composite laminate flooring for the purpose of having it installed in their home. They specifically intended to install the flooring in the bedroom to be used by the baby they were expecting.

102.     Both Ryan and Kristin Brandt have experience with building materials.  The Brandts were aware of the risks inherent in formaldehyde and the risk that building products could contain formaldehyde and other dangerous chemicals.  They were also aware that California has some of the most exacting emission regulations in the country.

103.     Prior to purchasing the composite laminate flooring, the Brandts viewed Lumber Liquidators' website.  Their safety concerns were satisfied by various representations Lumber

- 26 -

Liquidators made regarding the safety of its products and the fact that all of its composite

flooring products comply with California emissions standards – no matter where the products are

sold.

104.     After viewing products on the Lumber Liquidators website, the Brandts went to

the Lumber Liquidators retail store and ultimately purchased the composite laminate flooring.

The label on each of the products stated "California … Phase 2 Compliant for formaldehyde,"

which further confirmed their belief, based on Lumber Liquidators' other representations, that

the flooring product they were buying would be safe to install in a room in which their newborn

baby would sleep.

105.     The Brandts relied on the representations that the composite laminate flooring

they were purchasing did not contain unsafe levels of formaldehyde – and specifically that it

contained levels of formaldehyde that met California standards.  They would not have purchased

the product absent this or an equivalent representation.

106.     At the time the Brandts purchased the composite laminate flooring product,

Lumber Liquidators' representation that the product was compliant with CARB formaldehyde

emission standards was false.

107.     At the time of the purchase, Lumber Liquidators also failed to inform the Brandts

that the composite laminate flooring products they purchased actually exceeded the CARB

formaldehyde emission limits, and contained far more formaldehyde than comparable U.S.-

manufactured products.

108.     Mr. Brandt, with the help of a professional contractor, installed the composite

laminate flooring in one of the two rooms in which the Brandts planned to install the flooring.

Installation required them to cut pieces of the laminate that exposed the composite core.

- 27 -

109.     On March 1, 2015, the Brandts learned for the first time that the representations

Lumber Liquidators made regarding the formaldehyde compliance of its product were false.

After seeing the *60 Minutes* report, the Brandts arranged to have the Lumber Liquidators

composite flooring they purchased tested by an independent professional to determine the level

of its formaldehyde content.  The results showed formaldehyde levels that exceeded CARB

limits and that were unsafe for use in a home.

110.     The Brandts contacted Lumber Liquidators and reported their test findings.  A

Lumber Liquidators representative responded by claiming the test they performed was not

accurate, that the Brandts should instead use the air testing kit that Lumber Liquidators was

offering to provide, and that testing should be done solely on the air in their home and not on the

actual composite flooring product.

111.     In early April 2015 the Brandts received a Lumber Liquidators do-it-yourself

testing kit, collected an air sample following the directions, and sent the test kit to the lab using

the mailing label Lumber Liquidators provided.  While they have not been sent the actual results,

the Brandts received a letter from Lumber Liquidators stating

> Your results show that formaldehyde levels in your home
> fall within the range of normal indoor conditions.…
> Your low level of formaldehyde is similar to amounts
> measured in typical U.S. homes.…
>
> Based on your low test results, it does not appear that
> your floor is contributing to any abnormal exposure to
> formaldehyde in your home.

112.     The Brandts also received a second letter on behalf of Lumber Liquidators,

stating: "Based on the Brandts' test results, it does not appear that their floor is contributing

significantly to any abnormal exposure to formaldehyde in the home."

113.    The statements made in the letters from Lumber Liquidators were false.  At about the same time they conducted the do-it-yourself air test Lumber Liquidators provided, the Brandts commissioned an independent test of the air in their home that was conducted by a Certified Industrial Hygienist.  The results showed formaldehyde concentration in the air at a level that exceeds all recommended threshold limits for chronic exposure in home environments, and that even exceeds recommended threshold limits for a workplace environment (based on an eight hour exposure to an adult).  Upon being informed of the results, the Brandts' pediatrician advised that their child should not be allowed to sleep in the room in which the flooring was located and recommended having the flooring removed as soon as possible.  The Brandts have followed their physician's advice.

114.    Had the Lumber Liquidators composite laminate flooring been CARB compliant as represented, the Brandts would have been satisfied with their purchase.

115.    The Brandts would not have purchased the Lumber Liquidators composite laminate flooring had they known there was a risk that its actual formaldehyde content exceeded the CARB standards.  The Brandts have suffered injury as a result of Lumber Liquidators' misrepresentations and omissions in amounts that include the purchase price of the floors, the cost of installing the floors, and the costs involved in replacing the floors.

**E.      Devin and Sara Clouden**

116.    Devin and Sara Clouden live in Hamburg, New York, with their two young children.  In January 2013, the Cloudens purchased approximately 800 square feet of 12 mm Dream Home St. James Golden Acacia Laminate Flooring from Defendant's store in Buffalo, New York.  As stated on the packaging, the flooring was produced at a laminate mill in China.

117.    The Cloudens purchased the composite laminate flooring for the purpose of installing it in their home.  At the time of their purchase, the Cloudens had a two year old

- 29 -

daughter who had been born prematurely and still experienced a number of physical symptoms, including respiratory sensitivity.  Sara Clouden was also pregnant with their second child.  The Cloudens specifically chose laminate flooring because they believed it would be safer and less likely to exacerbate their daughter's breathing difficulties than carpeting or other flooring options.  They also believed the laminate flooring would be safe for a home with an infant child.

118.    The Cloudens were aware of the risks inherent in formaldehyde and the risk that harmful chemicals could be present in certain building materials.  They are also aware that California has some of the most stringent regulations in the country.

119.    The Cloudens viewed Lumber Liquidators' website and saw and heard various Lumber Liquidators advertisements.  They saw the representations Lumber Liquidators made regarding the safety and compliance of its products.

120.    The Cloudens also noted labels on the boxes stating that the product was "California … Phase 2 Compliant for Formaldehyde."

121.    The Cloudens relied on the representations that the composite laminate flooring they were purchasing complied with California regulations regarding formaldehyde.  They would not have purchased the product absent this or a similar representation informing them that the product did not contain elevated levels of formaldehyde.

122.    At the time that the Cloudens purchased their composite laminate flooring, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.

123.    At the time of the purchase, Lumber Liquidators also failed to inform the Cloudens that the composite laminate flooring product they purchased actually exceeded the

- 30 -

CARB formaldehyde emission limits, and contained far more formaldehyde than comparable U.S.-manufactured products.

124.     The Cloudens installed the Lumber Liquidators flooring that they purchased installed in their home with the help of a contractor.  The installation involved cutting pieces of the laminate flooring to size and installing cut pieces in the home.

125.     In March 2015, the Cloudens learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product were false.  A sample of the laminate wood flooring product that the Cloudens purchased from Defendant was tested by a certified laboratory.  The results of the lab test show that the Cloudens' laminate flooring product emits formaldehyde gas at a level that exceeds applicable CARB limits for formaldehyde emissions from MDF.

126.     Had the Lumber Liquidators composite laminate flooring been CARB compliant as represented, the Cloudens would have been satisfied with their purchase.

127.     The Cloudens would not have purchased the Lumber Liquidators composite laminate flooring had they known there was a risk that its actual formaldehyde content exceeded the CARB standards.  The Cloudens have suffered injury as a result of Lumber Liquidators' misrepresentations and omissions in amounts that include the purchase price of the floors, the cost of installing the floors, and the costs involved in replacing the floors.

**F.     Kevin and Julie Parnella**

128.     In approximately December 2013, Kevin and Julie Parnella purchased approximately 1500 square feet of Dream Home 8 mm Nirvana Royal Mahogany Laminate Flooring at a Lumber Liquidators store located in Plano, Texas, for use in their home, where they live with their four year old daughter.  The installation of the flooring involved cutting pieces of the laminate flooring to size and installing cut pieces in the home.

- 31 -

129.     The Parnellas were generally aware of the risks inherent in formaldehyde and the risk that formaldehyde has been used in certain building materials.

130.     The Parnellas viewed Lumber Liquidators' website and saw and heard various Lumber Liquidators advertisements, including representations Lumber Liquidators made regarding the safety and compliance of its flooring products.

131.     At the time that Plaintiffs purchased their composite laminate flooring, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.  A subsequent sample of the laminate wood flooring product that the Parnellas purchased from Defendant was tested by a certified laboratory using CARB testing methodology.  The results of the lab test show that the Parnellas' laminate flooring product emits formaldehyde gas at a level that exceeds applicable CARB limits for formaldehyde emissions from MDF.

132.     At the time of the purchase, Lumber Liquidators failed to inform the Parnellas that the composite laminate flooring product they purchased actually exceeded the CARB formaldehyde emission limits, and contained far more formaldehyde than comparable U.S.-manufactured products.

133.     The Parnellas relied on the understanding, based in part on Defendant's representations, that the composite laminate flooring they were purchasing was appropriate to have in a home and did not contain levels of chemicals such as formaldehyde that were potentially dangerous.  They would not have purchased a Lumber Liquidators Chinese-made flooring product had they known it contained more formaldehyde than similar products that were manufactured in the United States.

- 32 -

134.     The Parnellas suffered injury as a result of Lumber Liquidators'
misrepresentations and omissions and damages in amounts that include the purchase price of the
floors, the cost of installing the floors, and the costs involved in replacing the floors.

135.     After seeing the *60 Minutes* report, Mr. Parnella contacted Lumber Liquidators to
raise concerns regarding possible formaldehyde in his flooring.  A Lumber Liquidators
representative advised him that the floors were safe and that he should use the air testing kit that
Lumber Liquidators offered to provide.  Mr. Parnell received a Lumber Liquidators do-it-
yourself testing kit, collected an air sample following the directions, and sent the test kit to the
lab using the mailing label Lumber Liquidators provided.

136.     Lumber Liquidators, acting with the laboratory it retained, sent a letter to Mr.
Parnella with the results of its air test, stating "[b]ased on your low test results, it does not appear
that your floor is contributing to any abnormal exposure to formaldehyde in your home." This
representation was false as shown by the properly performed test on the content of the floors
themselves.

**G.     Shawn and Tanya Burke**

137.     In or around October 2014, Plaintiffs Shawn and Tanya Burke purchased
approximately 800 square feet of 12 mm Dream Home St. James Chimney Rock Charcoal
Laminate Flooring at a Lumber Liquidators store located in Crystal Lake, Illinois.  The
installation of the flooring involved cutting pieces of the laminate flooring to size and installing
cut pieces throughout the home.

138.     The Burkes were aware of risks inherent in formaldehyde and of the risk that
formaldehyde has been used in certain building materials.  The Burkes were seeking to replace
their carpeting with a flooring product that would not exacerbate Tanya Burke's allergies or
respiratory difficulties.

- 33 -

139.     Tanya Burke viewed Lumber Liquidators' website and saw the representations Lumber Liquidators made regarding the safety and compliance of their composite flooring products.  The Burkes also saw and heard various Lumber Liquidators marketing efforts, including representations Lumber Liquidators made regarding the safety and compliance of its flooring products and representations that their composite flooring was appropriate to have in a home with pets and children.

140.     At the time that Plaintiffs purchased their composite laminate flooring, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.  A subsequent sample of the laminate wood flooring product that the Burkes purchased from Defendant was tested by a certified laboratory using CARB testing methodology.  The results of the lab test show that the Burkes' laminate flooring emits formaldehyde gas at a level that exceeds applicable CARB limits for formaldehyde emissions from MDF.

141.     At the time of the purchase, Lumber Liquidators failed to inform the Burkes that the composite laminate flooring product they purchased actually exceeded the CARB formaldehyde emission limits, and contained far more formaldehyde than comparable U.S.-manufactured products.

142.     The Burkes relied on the understanding, based in part on Defendant's representations, that the composite laminate flooring they were purchasing was appropriate to have in a home and did not contain levels of chemicals, such as formaldehyde, that were potentially dangerous.  They would not have purchased a Lumber Liquidators Chinese-made flooring product had they known that it contained more formaldehyde than similar products that were manufactured in the United States.

143.    The Burkes have suffered injury as a result of Lumber Liquidators'

misrepresentations and omissions and have incurred damages in amounts that include the

purchase price of the floors, the cost of installing the floors, and the costs involved in replacing

the floors.

## VI.    CLASS ACTION ALLEGATIONS

144.    Plaintiffs incorporate by reference all the above allegations as if fully set forth

herein.

145.    Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure,

on behalf of themselves and the following Classes:

> **The California Class** (represented by Plaintiffs Washington, Ronquillo, and Balero).
>
> All persons in California who purchased one or more composite laminate flooring product for their personal, family, or household use rather than for resale or distribution, that was manufactured by or for Defendant in China.
>
> **The Florida Class** (represented by Plaintiffs Brandt).
>
> All persons in Florida who purchased one or more composite laminate flooring product for their personal, family, or household use rather than for resale or distribution, that was manufactured by or for Defendant in China, that Defendant advertised, labeled, or represented as being CARB compliant (or meeting standards for the State of California).
>
> **The New York Class** (represented by Plaintiffs Clouden).
>
> All persons in New York who purchased one or more composite laminate flooring product for their personal, family, or household use rather than for resale or distribution, that was manufactured by or for Defendant in China, that Defendant advertised, labeled, or represented as being CARB compliant (or meeting standards for the State of California).

010503-11  809817 V1

**The Texas Class** (represented by Plaintiffs Parnella).

All persons in Texas who purchased one or more composite laminate flooring product for their personal, family, or household use rather than for resale or distribution, that was manufactured by or for Defendant in China, that  Defendant advertised, labeled, or represented as being CARB compliant (or meeting standards for the State of California).

**The Illinois Class** (represented by Plaintiffs Burke).

All persons in Illinois who purchased one or more composite laminate flooring product for their personal, family, or household use rather than for resale or distribution, that was manufactured by or for Defendant in China, that Defendant advertised, labeled, or represented as being CARB compliant (or meeting standards for the State of California).

146.     Excluded from the Classes are governmental entities, Defendant, Defendant's affiliates and subsidiaries, Defendant's current or former employees, officers, directors, agents, representatives, and their family members, and the members of this Court and its staff.

147.     Plaintiffs do not know the exact size or identities of the members of the proposed Classes, since such information is in the exclusive control of Defendant.  Plaintiffs believe that the Classes encompass thousands of individuals whose identities can be readily ascertained from Defendant's books and records.  Therefore, the proposed Classes are so numerous that joinder of all members is impracticable.

148.     Plaintiffs believe the amount in controversy exceeds $5 million.

149.     All members of the proposed Classes have been subject to and affected by the same conduct.  All purchased composite laminate flooring products from the Defendant that were falsely advertised, labeled, and represented as being compliant with CARB standards for formaldehyde, that rigorous efforts were made to ensure compliance, and that the composite laminate flooring products were therefore safe to install in homes.  Instead, the levels of

- 36 -

formaldehyde in the flooring products were, at a minimum, unknown and in many cases exceeded lawful levels of formaldehyde.  Lumber Liquidators failed to inform all Plaintiffs and Class members that its Chinese-manufactured laminate flooring products contained formaldehyde at levels that exceeded CARB and were far higher than the levels in U.S.-manufactured products.

150.    The lack of monitoring to ensure that the Chinese mills complied with CARB and the resulting non-compliant composite laminate flooring products were not disclosed to any Class members, and was also negligent.

151.    There are questions of law and fact that are common to the Classes, and predominate over any questions affecting only individual members of the Classes.  These questions include, but are not limited to the following:

    a.    Whether Lumber Liquidators properly and adequately monitored their Chinese manufacturing plants to ensure CARB compliance;

    b.    Whether Lumber Liquidators' composite laminate flooring products that were manufactured in China and sold in California and throughout the country exceed the CARB limit;

    c.    Whether Lumber Liquidators falsely labeled and advertised its Chinese-manufactured composite laminate flooring products as being CARB compliant;

    d.    Whether any false representations regarding CARB compliance were made knowingly and willfully;

    e.    Whether Lumber Liquidators concealed and omitted material facts from its communications with and disclosure to all Class members regarding the levels of formaldehyde in its composite laminate flooring products;

f.   Whether Lumber Liquidators exacerbated the potential harm to Class members by providing misinformation regarding the proper methods to test for formaldehyde in its products in a manner designed to cause Class members to erroneously believe the products installed in their homes are suitable for a home;

g.   Whether Lumber Liquidators breached warranties to Class members regarding its composite laminate flooring products;

h.   Whether Lumber Liquidators' misrepresentations or omissions constitute unfair or deceptive practices under the respective consumer protection statutes of each of the states represented herein;

i.   Whether Lumber Liquidators' efforts to cover up their misrepresentations and omissions with additional misleading statements and omissions in the course of implementing its air testing program constitute unfair and deceptive practices under the respective consumer protection statutes of each of the states represented herein;

j.   Whether Lumber Liquidators' conduct entitles Class members to injunctive relief;

k.   Whether the above practices caused Class members to suffer injury; and

l.   The proper measure of damages and the appropriate injunctive relief.

152.   The claims of the individually-named Plaintiffs are typical of the claims of the proposed Classes and do not conflict with the interests of any other members of the proposed Classes.

153.   The individually-named Plaintiffs will fairly and adequately represent the interests of the respective Classes.  They are committed to the vigorous prosecution of the Classes' claims

- 38 -

and have retained attorneys who are qualified to pursue this litigation and have experience in

class actions – in particular, consumer protection actions.

154.     A class action is superior to other methods for the fast and efficient adjudication

of this controversy.  Each Class member is entitled to restitution of the price of the composite

laminate flooring product, and the cost of installation and removal of the unlawfully sold flooring

products.  The damages suffered by individual Class members are small compared to the expense

and burden of individual prosecution of this litigation.  Individual Plaintiffs may lack the

financial resources to vigorously prosecute a lawsuit against Defendant to recover damages

stemming from Defendant's unfair and unlawful practices.

155.     This putative class action meets the requirements of Fed. R. Civ. P. 23(b)(2) and

(b)(3).

## VII.   CAUSES OF ACTION

### COUNT I

### FRAUDULENT CONCEALMENT
### (By All Plaintiffs and All Classes described above)

156.     Plaintiffs incorporate by reference all of the above allegations as if fully set forth

herein.

157.     Plaintiffs bring this claim on their own behalf and on behalf of each member of

the Classes described above.

158.     Lumber Liquidators concealed and suppressed material facts concerning the

content of formaldehyde in its Chinese-made composite laminate flooring products.

159.     Defendant had a duty to disclose the true content of formaldehyde in its Chinese-

made composite laminate flooring products because it was known and/or accessible only to the

Defendant, who had superior knowledge and access to the facts, and the Defendant knew it was

- 39 -

not known to or reasonably discoverable by Plaintiffs and the Classes.  These omitted and

concealed facts were material because they directly impact the safety of the flooring products.

Whether composite flooring was manufactured with levels of formaldehyde that can pose

significant health risks is a material safety concern.

160.    Defendant actively concealed and/or suppressed these material facts, in whole or

in part, to protect its profits, and did so at the expense of Plaintiffs and the Classes.

161.    On information and belief, Lumber Liquidators has still not made full and

adequate disclosure and continues to defraud Plaintiffs and the Classes and conceal material

information regarding the levels of formaldehyde that exist in its Chinese-made composite

laminate flooring products.

162.    Because the omitted facts were material, Plaintiffs and all Class members are

entitled to a presumption and would have acted differently – not purchasing Defendant's

Chinese-made laminate flooring or paying less for it – if the true facts had been disclosed to

them.  And, in fact, Plaintiffs and the Classes were unaware of these omitted material facts and

would not have acted as they did if they had known of the concealed and/or suppressed facts.

Plaintiffs' and the Classes' actions were justified.  Lumber Liquidators was in exclusive control

of the material facts and such facts were not known to the public, Plaintiffs, or the Classes.

163.    Because of the concealment and/or suppression of the facts, Plaintiffs and the

Classes sustained damage because they purchased and retained flooring products that they would

not have purchased or installed in their homes had Defendant timely disclosed the fact that the

products were not compliant with CARB standards.

164.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiffs' and the Classes' rights and well-being to enrich

- 40 -

itself.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient

to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT II

### UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS ACTS AND PRACTICES
(Violation of California Business and Professions Code § 17200, *et seq.*)
(By Plaintiffs Washington, Ronquillo, Balero, and the California Class)

165.    Plaintiffs incorporate by reference all of the above allegations as if fully set forth

herein.

166.    California Business and Professions Code § 17200, *et seq.* prohibits "any

unlawful, unfair or fraudulent business act or practice."  CAL. BUS. & PROF. CODE § 17200.

167.    Throughout the Class Period, Defendant engaged in unlawful business acts and/or

practices by selling and/or distributing composite laminate flooring products in California that

exceed the CARB limit for formaldehyde emissions from composite wood products set forth in

Title 17 of the California Code of Regulations, § 93120, *et seq.*, specifically "Phase 2," which

mandates the maximum levels of formaldehyde that laminate flooring products can emit.

168.    Defendant's deceptive statements detailed above further violate California Health

and Safety Code § 25249.6 (Proposition 65), which requires products emitting formaldehyde at

levels above 40 micrograms per day to contain a health hazard warning.

169.    Defendant further engaged in unlawful business acts and/or practices by not

informing consumers that Defendant's composite laminate flooring products sold in California

emit formaldehyde at levels that exceed the formaldehyde emission limit set forth in the CARB

standards.  These actions were misleading and deceptive, and violated the False Advertising

Law, California Business & Professions Code § 17500, *et seq.* and the Consumer Legal

Remedies Act, California Civil Code § 1750, *et seq.*

- 41 -

170.     Throughout the Class Period, Defendant engaged in unlawful business acts and/or practices by making untrue, deceptive, or misleading environmental marketing claims on the labels of its composite laminate flooring products' packaging and on promotional materials, including pages of the Lumber Liquidators website, in violation of California's "Greenwashing" Statute, CAL. BUS. & PROF. CODE § 17580.5.  Such claims include, but are not limited to: overstating the environmental attributes of the composite laminate flooring products it distributes in California, failing to substantiate that the laminate wood flooring products it distributes in California have received third-party certification of CARB compliance, and misrepresenting explicitly or through implication that the composite laminate wood flooring Defendant distributes in California is non-toxic.  *See* CAL. BUS. & PROF. CODE § 17580.5(a).

171.     The acts, omissions, and practices alleged herein also constitute unfair business acts and practices in that Defendant's conduct is immoral, unscrupulous, and offends public policy by seeking to profit from Chinese-made composite laminate flooring products that emit dangerous levels of formaldehyde in violation of California law.

172.     The acts, omissions, and practices alleged herein also constitute fraudulent business acts and practices in that Defendant's representations regarding its compliance with CARB emission standards, regarding its measures to ensure CARB compliance by its Chinese manufacturers, and regarding the safety and quality of its composite laminate flooring are false, misleading, and are likely to deceive California customers.

173.     Plaintiffs relied on Defendant's misrepresentations.

174.     As a direct result of Defendant's unlawful, unfair, or fraudulent business acts and/or practices, Plaintiffs and Class members suffered injury in fact and lost money or property.

- 42 -

175.     Defendant profited from its sales of its falsely and deceptively advertised products to unwary California customers.

176.     Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution, injunctive relief against Defendant in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

## COUNT III

### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS
**CODE § 17500, *et seq.*(By Plaintiffs Washington, Ronquillo, Balero, and the California Class)**

177.     Plaintiffs incorporate by reference all of the above allegations as if fully set forth herein.

178.     Throughout the Class Period, Defendant engaged in unlawful and/or fraudulent conduct under California Business & Professions Code §§ 17500, *et seq.* ("the False Advertising Law"), by engaging in the sale of composite laminate flooring products, and publically disseminating various advertisements that Defendant knew or reasonably should have known were untrue and misleading.  Defendant committed such violations of the False Advertising Law with actual knowledge or knowledge fairly implied on the basis of objective circumstances.

179.     Defendant's advertisements, representations, and labeling as described herein were designed to, and did, result in the purchase and use of the Chinese-made composite laminate flooring products and Defendant profited from its sales of these products to unwary consumers.

180.     Plaintiffs reasonably relied on Defendant's representations made in violation of California Business and Professions Code § 17500, et seq.

- 43 -

181.     As a direct result of Defendant's violations, Plaintiffs suffered injury in fact and lost money.

182.     Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution and injunctive relief against Defendant in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

**COUNT IV**

**VIOLATION OF CALIFORNIA CONSUMER
LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750,** *et seq.*
**(By Plaintiffs Washington, Ronquillo, Balero, and the California Class)**

183.     Plaintiffs incorporate by reference all of the above allegations as if fully set forth herein.

184.     Defendant is a "person" within the meaning of California Civil Code §§ 1761(c) and 1770, and provides "goods" within the meaning of Civil Code §§ 1761(a) and 1770. Defendant's customers, including Plaintiffs and Class members, are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770.  Each purchase of Defendant's composite laminate flooring products by Plaintiffs and each Class member constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

185.     Each Class member purchased goods from Defendant that was primarily for personal, family, or household purposes.

186.     The Consumer Legal Remedies Act makes it unlawful for a company to:

    a.     Misrepresent the certification of goods.  CAL. CIV. CODE § 1770(a)(2)(3);

    b.     Represent that goods have characteristics or approval which they do not have.

       CAL. CIV. CODE § 1770(a)(5);

- 44 -

     c.   Represent that goods are of a particular standard, quality, or grade, if they are of another.  CAL. CIV. CODE § 1770(a)(7);

     d.   Advertise goods with intent not to sell them as advertised.  CAL. CIV. CODE § 1770(a) (9).

     e.   Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not.  CAL. CIV. CODE § 1770(a)(16).

187.   Throughout the Class Period, Defendant violated and continues to violate the above-mentioned provisions.

188.   As a direct and proximate result of Defendant's violations, Plaintiffs and Class members have suffered and are continuing to suffer irreparable harm.

189.   As a direct and proximate result of Defendant's violations, Plaintiffs and Class Members suffered injury in fact and lost money and/or property.

190.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the California Consumer Legal Remedies Act because Defendant is still representing that the flooring products have characteristics and qualifications which are false and misleading, and has injured Plaintiffs and Class members.

191.   In accordance with Civil Code § 1780 (a), Plaintiffs and members of the Class seek injunctive and equitable relief for Lumber Liquidators' violations of the CLRA that includes an order prohibiting Defendant from continuing to sell non-CARB compliant composite laminate flooring products and prohibiting Defendant from advertising or labeling non-compliant products as being CARB compliant.

192.   On December 10, 2014, on March 5, 2015, and on March 31, 2015, on behalf of a proposed class of California consumers and on behalf of each of the above named representatives

- 45 -

of the California Class, Plaintiffs' counsel mailed to Defendant, by certified mail, return receipt requested, the written notice required by Civil Code § 1782(a).  Defendant did not take the appropriate actions itemized in the notice within 30 days.

193.    Pursuant to California Civil Code § 1780, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution; actual, compensatory, consequential, and punitive damages; and injunctive relief against Defendant in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

## COUNT V

## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (By Plaintiffs Brandt and the Florida Class)

194.    Plaintiffs incorporate by reference all of the above allegations as if fully set forth herein.

195.    Defendant's advertising, labeling, and representations regarding the formaldehyde content and compliance with CARB made use of deception, false promises, misrepresentations and material omissions in connection with the sale and advertisement of its composite flooring products.  In so doing, Defendant engaged in unlawful, deceptive, and unconscionable trade practices in violation of FLA. STAT. §  501.201, *et seq*.

196.    The likelihood, and the possibility that the actual formaldehyde content in Defendant's Chinese-made composite flooring products exceeded amounts permitted by the State of California and contained far more formaldehyde than comparable U.S.-manufactured products was a material fact of which each class member should have been informed before purchasing the Lumber Liquidators product.

- 46 -

197.     Defendant's failure to inform consumers of the risk that the formaldehyde content in its Chinese-made composite flooring products exceeded amounts permitted by the State of California and contained far more formaldehyde than comparable U.S.-manufactured products was likely to deceive reasonable consumers.

198.     Defendant's misleading marketing, advertising, packaging, and labeling of its Chinese-made composite flooring products were likely to deceive reasonable consumers.

199.     Plaintiffs and other members of the Class were deceived by Defendant's deceptive trade practices.  Lumber Liquidators' misrepresentations and omissions were for the purpose of, and did, induce Plaintiffs and the other members of the Class to act or refrain from acting, or had the capacity to attract customers.

200.     As a direct and proximate result of Lumber Liquidators' deceptive trade practices, Plaintiffs and the other members of the Class have suffered damages that include, but are not limited to, the money they paid for the composite flooring products, the time and expense of installing the products, the cost of removing the products, and of otherwise remedying its effects.

201.     Lumber Liquidators has acted fraudulently, willfully, knowingly, and in total disregard for the rights, health, and well-being of the Plaintiffs and Class.  Defendant knew or should have known that their conduct would result in harm to Plaintiffs and the Class. Defendant continued its wrongful conduct nonetheless.  Punitive damages should be awarded to deter the actions of Defendant and others who might engage in similar conduct.

202.     Plaintiffs and the Class are entitled to damages in amounts to be proven at trial, and to an award of fees and costs as allowed under FLA. STAT. § 501.201, *et seq*.

## COUNT VI

### VIOLATION OF NY GENERAL BUS. LAW § 349, *et seq.*
### (By Plaintiffs Clouden and the New York Class)

203.     Plaintiffs incorporate by reference all of the above allegations as if fully set forth herein.

204.     Plaintiffs and Class Members are consumers of Defendant's products and are the end users and intended beneficiaries of said products.

205.     Defendant is engaged in consumer-oriented conduct within the intended ambit of GBL § 349.

206.     Defendant's actions and/or omissions as described herein violated GBL § 349, *et seq.*, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

207.     The likelihood, and the possibility, that the actual formaldehyde content in Defendant's Chinese-made composite flooring products exceeded amounts permitted by the State of California and contained far more formaldehyde than comparable U.S.-manufactured products was a material fact of which each class member should have been informed before purchasing the Lumber Liquidators product.

208.     Defendant's failure to inform consumers of the risk that the formaldehyde content in its Chinese-made composite flooring products exceeded amounts permitted by the State of California and contained far more formaldehyde than comparable U.S.-manufactured products was likely to deceive reasonable consumers.

209.     Defendant's misleading marketing, advertising, packaging, and labeling of its Chinese-made composite flooring products were likely to deceive reasonable consumers.

010503-11  809817 V1

210.     Defendant has engaged in unlawful deceptive business acts and practices by omitting disclosure of material information and by advertising to New York consumers through its website, promotional materials and with labeling on its laminate wood flooring products that misrepresent that such products are CARB compliant when in fact they are not.  Defendant has also engaged in unlawful deceptive business acts by falsely representing that the laminate wood flooring products it distributes and sells in New York have been certified by independent entities as compliant with CARB formaldehyde standards.

211.     Defendants continue to engage in unlawful deceptive business practices by failing to inform New York consumers that the laminate wood flooring products it distributed and sold in New York emit formaldehyde gas at levels that exceed the formaldehyde emission limits set forth in CARB.

212.     Defendant continues to engage in unlawful deceptive business practices by expressly stating on every package of laminate wood flooring products that it distributes and sells in New York, as well as advertising on its website, that such products comply with CARB.

213.     Defendant continues to engage in unlawful deceptive business practices by misleading customers as to the proper method to test the formaldehyde content in the air in their homes and the meaning of the results of such air tests.

214.     As a direct result of Defendant's unlawful deceptive business practices, Plaintiffs and the Class suffered injury by lost money or property.

215.     Defendant engaged in the same or similar unlawful deceptive business practices against the Class and caused harm to Class members.

- 49 -

216.     Accordingly, Plaintiffs seek on behalf of themselves and for all those similarly situated, compensatory and consequential damages, equitable and injunctive relief, punitive damages, costs and reasonable attorneys' fees and all other relief as appropriate.

## COUNT VII

### VIOLATION OF THE TEXAS DECEPTIVE
### TRADE PRACTICES ACT ("DTPA")
### (By Plaintiffs Parnella and the Texas Class)

217.     Plaintiffs incorporate by reference all of the above allegations as if fully set forth herein.

218.     Plaintiffs and Defendant are each "persons" as defined by TEX. BUS. & COM. CODE § 17.45(3).  Defendant's Chinese-made laminate wood flooring products are "goods" under TEX. BUS. & COM. CODE § 17.45(1).  Plaintiffs and the other Texas Class members are "consumers" as defined in TEX. BUS & COM. CODE § 17.45(4).  Defendant has at all relevant times engaged in "trade" and "commerce" as defined in TEX. BUS. & COM. CODE § 17.45(6), by advertising, offering for sale, selling, leasing, and/or distributing its laminate wood flooring products in Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

219.     Lumber Liquidators violated DTPA § 17.50(a)(2) because Lumber Liquidators breached both express and implied warranties relating to Chinese-made flooring, as describe in detail above.

220.     Lumber Liquidators' violations of DTPA § 17.50(a)(2) were the producing cause of actual economic damages to Plaintiffs and the other Class members equal to: (1) direct economic damages at the point of sale in the amount of the difference in value between the value of the Chinese-made flooring as warranted (the full purchase price) and the value of the flooring as delivered, and (2) consequential economic damages at the point of repair in the form of the

- 50 -

cost of repair and/or the cost of tearing out Lumber Liquidators' Chinese-made flooring and installing non-defective replacement flooring.  Plaintiffs and the other Class members seek to recover these economic damages from Lumber Liquidators pursuant to DTPA § 17.50(b)(1).

221.    Alternatively, Plaintiffs and the other Class members seek disgorgement and/or restitution of the gross revenue derived by Lumber Liquidators from its sale of Chinese-made flooring to them, along with any other equitable relief to which they are entitled, pursuant to DTPA § 17.50(b)(3).  In addition to their actual economic damages pursuant to DTPA § 17.50(d), Plaintiffs and the other Class members are entitled to recover their reasonable and necessary attorneys' fees and court costs.

222.    Lumber Liquidators committed the conduct in question knowingly or intentionally, pursuant to DTPA § 17.50(b), as evidenced by the fact that despite knowledge of the excessively high levels of formaldehyde in its flooring from the complaints and requests for refund it received from Class members, Internet message boards, and from published product reviews, Lumber Liquidators continued to market and sell the Chinese-made flooring.  Because Lumber Liquidators' breaches of its express and implied warranties relating to the Chinese-made flooring were made knowingly or intentionally, Plaintiffs and the other Class members are entitled to recover additional damages of not more than three times the amount of their economic damages.

223.    Defendant owed Plaintiffs a duty to disclose the defective nature of its Chinese-made laminate wood flooring because Defendant possessed exclusive knowledge regarding the manufacture of the products.  Defendant's failure to inform consumers of the risk that the formaldehyde content in its Chinese-made composite flooring products exceeded amounts

permitted by the State of California and contained far more formaldehyde than comparable U.S.-manufactured products was likely to deceive reasonable consumers.

224.    For those Class members who purchased Chinese-made flooring from Lumber Liquidators more than two years before the filing of the original complaint in this action, the statute of limitations has not run on their DTPA causes of action pursuant to TEX. BUS. & COM. CODE § 17.565 because they did not discover, and should not have discovered in the exercise of reasonable diligence, Lumber Liquidators' breaches of warranties until within two years prior to the filing of the original complaint in this action.

225.    All procedural prerequisites, including notice, have been met.  The giving of notice to Defendant is rendered impracticable pursuant to TEX. BUS. & COM. CODE § 17.505(b) and unnecessary because Defendant has notice of the claims against it through the numerous complaints filed against the company.  Pursuant to TEX. BUS. & COM. CODE § 17.505(b), Plaintiffs, individually and on behalf of the other members of the Texas Class, have sent the Texas Consumer Protection Division a copy of the original complaint notifying it of the applicable claims alleged here on behalf of the Texas Class.

226.    Plaintiffs and the other members of the Texas Class sustained damages as a result of Lumber Liquidators' unlawful acts and are therefore entitled to damages and other relief as provided under the DTPA.  Plaintiffs and the other members of the Texas Class should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of its laminate wood flooring products.

- 52 -

## COUNT VIII

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT
### (815 ILL. COMP. STAT. 505/1, *et seq.*)
### (By Plaintiffs Burke and the Illinois Class)

227.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

228.     Plaintiff and other members of the Illinois Class, as purchasers of Lumber Liquidators laminate flooring, are consumers within the meaning of Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), given that Lumber Liquidators' business activities involve trade or commerce, and are addressed to the market generally and otherwise implicate consumer protection concerns.

229.     The allegations set forth herein constitute unfair methods of competition and unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud Act.

230.     The likelihood, and the possibility, that the actual formaldehyde content in Defendant's Chinese-made composite flooring products exceeded amounts permitted by the State of California and contained far more formaldehyde than comparable U.S.-manufactured products was a material fact of which each class member should have been informed before purchasing the Lumber Liquidators product.

231.     Defendant owed Plaintiffs a duty to disclose the defective nature of its Chinese-made laminate wood flooring because Defendant possessed exclusive knowledge regarding the manufacture of the products.  Defendant's failure to inform consumers of the risk that the formaldehyde content in its Chinese-made composite flooring products exceeded amounts permitted by the State of California and contained far more formaldehyde than comparable U.S.-manufactured products was likely to deceive reasonable consumers.

- 53 -

232.     Lumber Liquidators knowingly concealed, suppressed and consciously falsified material facts to Plaintiff and other members of the Illinois Class.

233.     Lumber Liquidators misrepresented that its Chinese-manufactured laminate flooring complied with CARB standards for formaldehyde containing products, knowing that consumers would likely rely on the advertisements, packaging, and Lumber Liquidators' representations when purchasing its Chinese-manufactured laminate flooring.  Defendant's representations were material and false in that the laminate flooring in question did not comply with the standards set by CARB, and contained far more formaldehyde than that organization allowed.

234.     Lumber Liquidators' material misrepresentation set forth above constitutes an unconscionable commercial practice, deception, fraud, false promise, and misrepresentation of a material fact as to the nature of the goods it sold, in violation of the Illinois Act.

235.     Once Lumber Liquidators had any reason to believe its laminate flooring was not in compliance with CARB standards as advertised, Plaintiff and other consumers were entitled to disclosure of that fact because higher levels of formaldehyde content and emission would be a material fact in a consumer's decision making process, and, without Lumber Liquidators' disclosure, consumers would not necessarily know about the potential hazards of the product.

236.     Lumber Liquidators intended that Plaintiff and other members of the Illinois Class would rely on its deception by purchasing the laminate flooring, unaware of the material facts described above.  This conduct constitutes consumer fraud within the meaning of the Illinois Consumer Fraud Act.

237.     Plaintiff and the other members of the Illinois Class paid money for the laminate wood flooring and paid to have the flooring installed.  However, Plaintiff and the other class

- 54 -

members did not obtain the full value of the advertised products.  If Plaintiff and the other members of the class had known the true nature of Defendant's laminate wood flooring products, they would not have purchased the products for the price they paid.

238.     Plaintiff and the other members of the Illinois Class are therefore entitled to recover compensatory damages and other relief, including costs and fees, as provided under the Illinois Consumer Fraud Act.

## COUNT IX

### VIOLATION OF BREACH OF IMPLIED WARRANTY
### (By all Plaintiffs and classes discussed above)

239.     Plaintiffs re-allege and incorporate by reference all paragraphs above as though fully set forth herein.

240.     Plaintiffs and Class members are "buyers" within the meaning of each of their respective State's implied warranty statutes.  *See*, *e.g.*, CAL. CIV. CODE § 1791(b); TEX. BUS. & COM. CODE § 2.103; N.Y.U.C.C. LAW § 2-103; FLA. STAT. § 672.103; 810 ILCS 5/2-103; ILL. REV. STAT., CH. 26, PARA. 2-103.

241.     Lumber Liquidators is a "seller" and its Chinese-made composite laminate flooring products are "consumer goods" within the meaning of each state's warranty statutes. CAL. CIV. CODE § 1791(a),(l); N.Y.U.C.C. LAW §§ 2-103(1)(d) & 2-105; FLA. STAT. §§ 672.103(1)(d) & 672.105; TEX. BUS. & COM. §§ 2.103(a)(4) & §2.105(a); 810 ILCS 5/2-103; ILL. REV. STAT., CH. 26, PARA. 2-103(1)(d); 810 ILCS 5/2-105; ILL. REV. STAT., CH. 26, PARA. 2-105.

242.     Lumber Liquidators impliedly warranted to Plaintiffs and the Classes that the Chinese-made composite flooring products Plaintiffs and the Class purchased were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) & 1792; CAL. CIV. CODE §

- 55 -

1791(a); N.Y.U.C.C. Law § 2-314; Fla. Stat. § 672.314; Tex. Bus. & Com. § 2.314; 810 ILCS

5/2-314; and Ill. Rev. Stat., Ch. 26, Para. 2-314.  However, the Chinese-made composite

flooring products do not have the quality that a buyer would reasonably expect and were

therefore not merchantable.

243.    Lumber Liquidators' Chinese-made composite flooring products would not pass

without objection in their trade (because the trade does not accept laminate flooring that emits

such high levels of formaldehyde and, in California, that exceeds CARB), are not fit for the

ordinary purposes for which such goods are sold (because safety and compliance with applicable

governmental regulations is part of ordinary fitness).

244.    In addition, Lumber Liquidators breached its implied warranty of merchantability

to Plaintiffs and the other Class members because the Chinese-made flooring did not conform to

the promises and affirmations of facts set forth on its container and label. As described above,

the product packaging stated, "California 93120 Phase 2 Compliant Formaldehyde."  The

Chinese-made flooring did not meet CARB and all applicable statutes and regulations, as set

forth on its container and label. As such, the products do not conform to the promises or

affirmations of fact made on the container or label, in violation of Cal. Civ. Code § 1791(a)(4);

N.Y.U.C.C. Law § 2-314(2)(f); Fla. Stat. § 672.314(2)(f); Tex. Bus. & Com. Code §

2.314(b)(6); 810 ILCS 5/2-314; and Ill. Rev. Stat., Ch. 26, Para. 2-314(2)(f).

245.    Any attempts by Lumber Liquidators to disclaim the implied warranty of

merchantability is unenforceable, as the disclaimer failed to mentioned the implied warranty of

merchantability and were not conspicuous as required by law, and were both procedurally and

substantively unconscionable, rendering them unenforceable.

246.    As a result, Plaintiffs and the Class members were injured through their purchase of non- merchantable products.

247.    Under each state's implied warranty statutes, Plaintiffs and Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Chinese-made composite flooring products, or the overpayment of amounts they paid for the products, along with consequential damages, including the cost necessarily incurred to install and then to remove the flooring products.  Plaintiffs and Class members are entitled to costs and attorneys' fees.

### COUNT X

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, *ET. SEQ.* ("MMWA")
### (Asserted Against Lumber Liquidators on Behalf of all Plaintiffs and Classes)

248.    Plaintiffs incorporate all preceding and subsequent factual allegations as if fully set forth herein.

249.    Plaintiffs bring this claim on behalf of themselves and their respective classes.

250.    The Chinese-made flooring is a consumer product as defined in 15 U.S.C. § 2301(1).

251.    Lumber Liquidators is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) & (5).

252.    The warranty that came with the products constitutes a "written warranty" under 15 U.S.C. § 2301(6)(A) and/or (B).

253.    Plaintiffs and the other Class members are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because: (a) they are buyers of a consumer product; (b) they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty; and (c) they are entitled to enforce a written warranty.

- 57 -

254.     Pursuant to 15 U.S.C. § 2310(e), the Plaintiffs and the other Class members are entitled to bring this class action and are not required to give Lumber Liquidators notice and opportunity to cure until such time as the Court determines the representative capacity of the Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

255.     Lumber Liquidators is liable to the Plaintiffs and the other Class members pursuant to 15 U.S.C. § 2310(d)(1), because it breached its written warranty.  Specifically, it refused to honor the written warranty by refusing to properly repair or replace the defective Chinese-made flooring, as set forth above.

256.     In connection with its sales of the Chinese-made flooring, Lumber Liquidators gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  As a part of the implied warranty of merchantability, Lumber Liquidators warranted that the Chinese-made flooring: (a) was fit for its ordinary purpose as safe flooring that complies with all applicable laws and regulations, (b) would pass without objection the trade under its contract description as flooring meeting CARB and all applicable statutes and regulations, (c) was adequately contained, packaged and labeled as the agreements required, and (d) conformed to the promises and affirmations of fact regarding CARB and regulatory compliance as set forth on its container and label.  Lumber Liquidators is liable to Plaintiffs and the Class pursuant to 15 U.S.C. §  2310(d)(1), because it breached the implied warranty of merchantability, as set forth above.

257.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and the other Class members are entitled to recover the following damages proximately caused by Lumber Liquidators' breaches of its written warranty and the implied warranty of merchantability: (1) direct economic damages at the point of sale in the amount of the difference in value between the value of the Chinese-

- 58 -

made flooring as warranted (the full purchase price) and the value of the flooring as delivered ($0), and (2) consequential economic damages at the point of repair in the form of the cost of repair and/or the cost of tearing out Lumber Liquidators' Chinese-made flooring and installing non-defective replacement flooring.

258.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

## COUNT XI

### NEGLIGENT MISREPRESENTATION
### (By all Plaintiffs and Classes described above under their respective laws)

259.    Defendant made representations about its Chinese-made laminated flooring products that it did not have reasonable grounds to believe were true. These statements include, inter alia, that the products complied with CARB standards for formaldehyde.  Defendant made these representations on its product boxes, on its website, and in its invoices.

260.    Defendant's statements regarding its products meeting CARB standards for formaldehyde were false.

261.    Defendant had control over the Chinese mills that supplied its laminated flooring products, and had a duty to ensure that its products were in fact complying with the standards that Defendant had represented to its customers the products met.

262.    Plaintiffs were induced to purchase Defendant's Chinese-made laminated flooring products as a result of Defendant's negligent misrepresentations, and thereby suffered injury.

- 59 -

## COUNT XII

## DECLARATORY RELIEF

266.    Plaintiffs incorporate by reference the foregoing allegations as if set fully herein.

267.    Plaintiffs, on behalf of themselves and all others similarly situated, contend that Defendant's sale of composite laminate flooring products do not comply with the CARB standards.  On information and belief, Defendant contends that its sale of laminate wood flooring products comply with the CARB standards.

268.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all Class members, seek the following relief against Defendant:

A.      An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the respective Classes;

B.      A finding and declaration that Defendant's policies and practices of labeling and advertising the composite laminate flooring products it sells in California and throughout the country as CARB compliant are unlawful pursuant to Title 17 of the California Code of Regulations, §§ 93120-93120.12;

C.      A finding and declaration that Defendant's policies and practices of distributing and/or selling composite laminate flooring products in California and throughout the country with formaldehyde emissions that violate the CARB standards are unlawful pursuant to Title 17 of the California Code of Regulations, §§ 93120-93120.12;

- 60 -

D.      Injunctive relief prohibiting Defendant from continuing to distribute and/or sell composite laminate flooring products that violate the CARB standards;

E.      Restitution of all money and/or property that Plaintiffs and Class members provided to Defendant for the purchase and installation of Defendant's Chinese-made composite laminate flooring products;

F.      Damages in an amount to be determined at trial for damages, including actual, compensatory, and consequential damages incurred by Plaintiffs and Class members;

G.      Punitive damages where allowable by law;

H.      An award to Plaintiffs and Class members of reasonable attorneys' fees and costs; and

I.      An award of such other and further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

DATED:  September 18, 2015                    Respectfully submitted,

                                              /s/ Steven W. Berman
                                              Steve W. Berman (*Pro Hac Vice*)
                                              E-mail: steve@hbsslaw.com
                                              Ari Brown (*Pro Hac Vice*)
                                              E-mail: ari@hbsslaw.com
                                              Hagens Berman Sobol Shapiro LLP
                                              1918 Eighth Avenue, Suite 3300
                                              Seattle, WA  98101
                                              206.623.7292 (Telephone)
                                              206.623.0594 (Facsimile)

                                              *Plaintiffs' Co-Lead Counsel*

                                              /s/ Nancy Fineman
                                              Nancy Fineman (*Pro Hac Vice*)
                                              E-mail: nfineman@cpmlegal.com Matthew K.
                                              Edling (*Pro Hac Vice*) E-mail:
                                              medling@cpmlegal.com
                                              Cotchett, Pitre & McCarthy, LLP
                                              840 Malcolm Road, Suite 200
                                              Burlingame, CA 94010
                                              650.697.6000 (Telephone)
                                              650.697.0577 (Facsimile)

                                              *Plaintiffs' Co-Lead Counsel*

                                              /s/ Steven J. Toll
                                              Steven J. Toll (VSB No. 15300)
                                              E-mail: stoll@cohenmilstein.com
                                              Douglas J. McNamara (*Pro Hac Vice*)
                                              E-mail: dmcnamara@cohenmilstein.com
                                              Cohen Milstein Sellers & Toll, PLLC
                                              1100 New York Ave NW, Suite 500
                                              Washington, DC 20005
                                              202.408.4600 (Telephone)
                                              202.408.4699 (Facsimile)

                                              *Plaintiffs' Co-Lead Counsel*

- 62 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2015, a true and correct copy of the foregoing was filed electronically with the Clerk of this Court using the CM/ECF system, in accordance with the Local Rules and the procedures adopted in the Initial Order and Pretrial Order No. 1A. This filing will cause a copy of the same to be served, via a Notice of Electronic Filing, upon counsel of record who have consented to electronic service in this matter. Additionally, a true and correct copy of the foregoing was served by U.S. Mail on the following:

**Berg v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2716**

**Richard A. Maniskas**
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, PA 19087

**Brown v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2659**

| | |
|---|---|
| **Warren T. Burns** | **Korey A. Nelson** |
| **Daniel H. Charest** | **Elizabeth A. Roché** |
| Burns Charest LLP | Burns Charest LLP |
| 500 N. Akard, Suite 2810 | 365 Canal Street, Suite 1170 |
| Dallas, TX 75201 | New Orleans, LA 70130 |

**Doss v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2711**

**Thomas B. Malone**
The Malone Firm, LLC
1650 Arch Street, Suite 1903
Philadelphia, PA 19103

**Guest v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2717**

| | |
|---|---|
| **Anthony J. Bolognese** | **Nicholas J. Guiliano** |
| Bolognese & Associates LLC | The Guiliano Law Firm, P.C. |
| 1617 JFK Boulevard, Suite 650 | 230 South Broad Street, Suite 601 |
| Philadelphia, PA 19103 | Philadelphia, PA 19102 |

**Jacek v. Lumber Liquidators, No. 1:15-cv-3985**

**Michael R. Reese**
Milberg Weiss Bershad & Schulman LLP
1 Pennsylvania Plaza
New York, NY 10119-0165

**Karriem v. Lumber Liquidators, Inc., No. 1:15-cv-2765**

**Elijah Karriem (pro se)**
1404 Asbury Court
Hyattsville, Maryland 20782

**Loup v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2733**

**Fernando Paladino (pro se)**
2302 Justin Lane
Harvey, LA 70058

**Parnella v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2736**

**Cary L. McDougal**
Baron & Budd, PC - Dallas
3102 Oak Lawn Ave
Suite 1100
Dallas, TX 75219

**Smith v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2693**

**Richard Dorman**
Walker Badham
Badham & Buck LLC
2001 Park Place North, Ste. 500
Birmingham, AL 35203-274

/s/ Steve W. Berman
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP

- 2 -